719 S.E.2d 774

**Lee James CRAWFORD, Defendant Below, Petitioner**

v.

**David SNYDER and Mary Snyder, Personal Representatives. of the Estate of Michael Snyder, Deceased, Plaintiffs Below, Respondents**

**and**

**Huntfield, L.C., Defendant Below, Respondent.**

**No. 101579.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 19, 2011.

Decided Nov. 16, 2011.

Traci L. Wiley, Esq., Gary E. Pullin, Esq., Jeffrey W. Molenda, Esq., Pullin, Fowler, Flanagan, Brown & Poe, PLLC, Charleston, WV, for Petitioner, Lee James Crawford.

F. Samuel Byrer, Esq., Peter A. Pentony, Esq., Law Office of F. Samuel Byrer, PLLC, Charles Town, WV, for Respondents, David and Mary Snyder.

Michael D. Lorenson, Esq., Bowles Rice McDavid Graff & Love, LLP, Martinsburg, WV, for Respondent, Huntfield, L.C.

PER CURIAM:

Lee James Crawford, the petitioner herein and defendant below, appeals a January 12, 2010, judgment order and April 12, 2010, order denying his motion for a new trial entered by the Circuit Court of Jefferson County in this wrongful death action. In this appeal, Mr. Crawford asserts several assignments of error and seeks a new trial. This Court has before it the petition for appeal, the responses thereto, the designated record, and the arguments of counsel. For the reasons set forth below, the orders of the circuit court entered on January 12, 2010, and April 12, 2010, are affirmed.

## I.

### FACTS

On July 19, 2004, Michael Snyder was struck and killed by an oncoming car driven by Mr. Crawford. At the time of his death, Michael Snyder was working as a flagman for CHS Traffic Control Services, Inc. (hereinafter "CHS"), and he was standing in the southbound lane of Augustine Avenue, near Charles Town, West Virginia. The lane was closed while a new entrance was being created for a subdivision owned by Huntfield, L.C. (hereinafter "Huntfield"), a Virginia-based

real estate development company. Huntfield had contracted with CHS to perform the traffic control associated with the construction project. Huntfield and its contractors [1] had obtained the permit necessary for the lane closure and other work being completed. The permit required Huntfield to "comply with all applicable state and federal laws in the performance of work under this permit." With respect to a lane closure, the applicable traffic control manual required that the following signs be put in place: "Road Work Ahead" followed by "Shoulder Work Ahead" followed by "One Lane Road 1000 Feet" followed by a sign showing the flagger symbol. On the day Michael Snyder was killed, the flashing lights on the signs were not working, and the sign stating "One Lane Road 1000 Feet" was not in place. Huntfield maintained that Michael Snyder was responsible for setting out the signs on behalf of his employer, CHS.

Prior to July 19, 2004, Mr. Crawford was employed by VIP Limousine Service, Ltd. (hereinafter "VIP"), a transportation company based in Keyser, West Virginia, owned by Glen Lee. VIP is paid by the State of West Virginia to transport Medicaid and Medicare recipients to medical and other appointments. Mr. Crawford's supervisor was Heather Strachan, a dispatcher for VIP. At the time of the accident, Mr. Crawford was transporting two frequent VIP customers. However, he was not operating a VIP van but instead was driving a vehicle owned by Sharon Wilson, Ms. Strachan's mother.[2] Ms. Strachan was also a passenger in the car.

As Mr. Crawford entered the construction zone, he observed Michael Snyder standing in or near the road. Mr. Crawford then looked down inside the car to find his "spit cup" for his smokeless tobacco, and when he looked up, it was too late for him to avoid hitting Michael Snyder.[3]

Thereafter, the respondents herein and plaintiffs below, David and Mary Snyder, the parents of Michael Snyder, filed this wrongful death action on behalf of their son's estate against Huntfield; Ryan Incorporated Central;[4] CHS; VIP; Glen Lee, doing business as VIP; Sharon Wilson; Heather Strachan; and Mr. Crawford. The case proceeded to trial on December 1, 2009. The jury returned a verdict finding Mr. Crawford to be one hundred percent at fault for the death of Michael Snyder. The jury awarded $700,000.00 for sorrow and mental anguish; $700,000.00 for the loss of solace; and $1,109,308.00 for loss of income, services, protection, care and assistance provided by Michael Snyder for a total damages award of $2,509,308.00. The jury further found that Mr. Crawford and Ms. Strachan were engaged in a joint enterprise, thereby making Ms. Strachan's estate[5] jointly and severely liable for the compensatory damages. Finally, the jury determined that a punitive damages award in the amount of $300,000.00 against Mr. Crawford was appropriate. Subsequently, Mr. Crawford filed a motion for a new trial which was denied by the order entered on April 12, 2010. This appeal followed.[6]

---

1. Huntfield's general contractor, Ryan Incorporated Central, was also named as a defendant in this case.

2. One of the issues disputed at trial was the status of Mr. Crawford and Ms. Strachan's employment with VIP at the time of the accident. VIP maintained that they had voluntarily ceased their employment before the accident occurred. Mr. Crawford testified that he believed that he had been fired based upon a letter he received from VIP dated the day after the accident occurred which purported to confirm, retroactively, his termination as of July 16,2004.

3. Mr. Crawford pled no contest to negligent homicide.

4. *See* note 1, *supra.*

5. Ms. Strachan died during the pendency of this lawsuit.

6. A separate appeal was filed by the Snyders. In their appeal, the Snyders also sought a new trial; they asserted that the trial court erred by denying their motions for partial summary judgment in which they sought a finding of *prima facie* negligence against Huntfield and a finding regarding agency against VIP. The Snyders also alleged error in the jury instructions. By Memorandum Order entered on June 24, 2011, this Court affirmed the circuit court's rulings with respect to the issues raised in the Snyders' appeal. The Snyders then filed a response to Mr. Crawford's petition agreeing that he should be granted a new trial but also arguing that the trial court did not err by allowing the jury to make a punitive damages assessment. Huntfield re-

## II.

## STANDARD OF REVIEW

 As noted above, Mr. Crawford has asserted several assignments of error. Where a specific standard of review is applicable, it will be set forth in our analysis below. Generally,

> "[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus Point 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

Syllabus Point 2, *Black v. State Consol. Public Retirement Bd.*, 202 W.Va. 511, 505 S.E.2d 430 (1998). With respect to a motion for a new trial, this Court has held:

> Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syllabus Point 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). With these standards in mind, the assignments of error will be considered.

## III.

## DISCUSSION

Each assigned error asserted by Mr. Crawford will be discussed separately below.

### A. Limitation on Trial Testimony

 Mr. Crawford first contends that the trial court erred by limiting his testimony at trial. Mr. Crawford was called as an adverse witness by the Snyders during their case-in-chief to give testimony with regard to his employment relationship with defendants VIP and Glen Lee. On cross-examination, Mr. Crawford's own counsel attempted to question him regarding issues other than his employment with VIP. As Mr. Crawford's attorney began asking him about the warning signs or lack thereof in the construction zone, multiple parties objected, stating that such questioning exceeded the scope of direct examination. After discussing the matter with counsel, the court sustained the objection, and Mr. Crawford's attorney was not permitted to question him regarding anything other than the employment issue. Thereafter, Mr. Crawford never returned to the trial. Consequently, the jury never heard Mr. Crawford's testimony regarding what happened at the time of the accident.[7]

According to Mr. Crawford, his medical condition, which requires him to use portable oxygen, precluded him from returning to trial. He indicates that it was not possible for him to travel from his home in Keyser, West Virginia, back to the trial which took place in Charles Town. While Mr. Crawford acknowledges that the rules of evidence allow a judge to limit cross-examination to the scope of direct examination, he also points out that this Court stated in *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991), that a judge must balance fairness to both parties. Mr. Crawford maintains that the trial court's ruling which limited his testimony was not in the interest of justice given his medical condition which prevented him from returning to trial.

 "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). Rule 611(b)(1) of the West Virginia Rules of Evidence provides that "[a] party may be cross-examined on any matter relevant to any issue in the case,

---

sponded to both petitions for appeal and asserted that the trial court had not committed any reversible error.

**7.** During oral argument, the parties advised this Court that the jury was instructed that Mr. Crawford would not be present for much of the trial because of his medical condition and that his absence should not be a factor in the jury's verdict.

including credibility." The rule further states, however, that "[i]n the interest of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination." In Syllabus Point 2 of *Gable*, this Court held that "[u]nder Rule 611(a) of the *West Virginia Rules of Evidence* [1985], the trial judge clearly has discretion to 'exercise reasonable control over the mode and order of interrogating witnesses in presenting evidence . . . .'; and in doing so, he must balance the fairness to both parties."[8]

A review of the trial transcript shows that during the discussion with counsel that followed the objection to Mr. Crawford's testimony on cross-examination, the trial court was not informed that Mr. Crawford would not be able to return to give further testimony during the presentation of his own case. While it appears that the court was aware that Mr. Crawford would not be attending trial every day,[9] the court was not informed by Mr. Crawford or his counsel that he would not be returning to give additional testimony. It is clear from the trial transcript that the court was initially inclined to allow Mr. Crawford to respond to the questions asked by his counsel because of Mr. Crawford's medical condition. The court noted though that he had been present all day and his oxygen supply was low at that point. While Mr. Crawford's counsel indicated that he did not want to have to bring his client back to court, he did not advise the trial court that it would be impossible to do so. Given the fact that the court was not informed that Mr.

Crawford would not be able to return to trial and given the latitude afforded by Rule 611, the trial court did not abuse its discretion by limiting the cross-examination of Mr. Crawford with respect to matters not testified to on direct examination.

### B. Admission of Business Record

▪ Mr. Crawford's next assignment of error concerns a report prepared by an individual named Mike Fanning, an employee of Ryan Incorporated Central, that was submitted into evidence by his codefendant, Huntfield. Mr. Crawford argues that the trial court erred by admitting this report into evidence under the business record exception to the hearsay rule as set forth in Rule 803(6) of the West Virginia Rules of Evidence.[10] Mr. Crawford maintains that the foundational requirements for admission of the report were not satisfied because it was prepared based on secondhand sources rather than persons with actual knowledge of the accident. Mr. Crawford further argues that the report should not have been admitted into evidence because it was factually incorrect as it stated that all the proper construction signs were posted contrary to other evidence admitted at trial which indicated that the "Lane Closed 1000 Feet" sign was not in place.

▪ With regard to the admission of evidence under the business record exception to the hearsay rule, this Court has stated:

Before evidence may be admitted under W. Va. R. Evid. 803(6), the proponent must demonstrate that such evidence is (1) a

---

**8.** Rule 611(a) of the West Virginia Rules of Evidence states in its entirety:

*Control by court.*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

**9.** *See* note 7, *supra.*

**10.** Rule 803 of the West Virginia Rules of Evidence provides, in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

memorandum, report, record, or data compilation, in any form; (2) concerning acts, events, conditions, opinions or diagnoses; (3) made at or near the time of the matters set forth; (4) by, or from information transmitted by, a person with knowledge of those matters; (5) that the record was kept in the course of a regularly conducted activity; and (6) that it was made by the regularly conducted activity as a regular practice.

Syllabus Point 7, *Lacy v. CSX Transp., Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999). This Court further held in Syllabus Point 8 of *Lacy*:

In order to satisfy the knowledge requirement of W. Va. R. Evid. 803(6), the party seeking to admit such evidence may establish either (1) that the preparer of the record had knowledge of the matters reported; or (2) that the information reported was transmitted by a person with knowledge, who was acting in the course of a regularly conducted activity; or (3) that it was a regular practice of the activity to rely upon communications from persons with knowledge.

Based upon careful review of the record, this Court finds that the trial court did not abuse its discretion by admitting Mr. Fanning's report into evidence pursuant to Rule 803(6). The report was submitted into evidence during Mr. Fanning's testimony. Mr. Fanning explained that as the on-site supervisor, his job responsibilities included making a report of any accidents for his company's internal safety records. He stated that such reports were made on a regular basis and that this particular report was made on the same day the accident occurred. Contrary to Mr. Crawford's assertions, Mr. Fanning testified that while he did not witness the accident, his statements in the report regarding the construction signs were based on his own observations. Clearly, the foundational requirements for admission of this document under Rule 803(6) were satisfied. Further-

more, any factual error in the report did not render it inadmissible. While such an error may have affected the weight accorded the evidence by the jury,[11] it was not relevant to the admissibility of the document.

### C. Punitive Damages

■■■■■ Mr. Crawford also challenges the punitive damages awarded against him. First, he asserts that the trial court erred by allowing the jury to consider a punitive damages award. Second, he says that the trial court erred by not giving him the opportunity to testify regarding his financial status before the jury made its punitive damages assessment. Third, he asserts that as an alternative to not granting him a new trial, the trial court should have at least awarded a remittitur of the punitive damages. Mr. Crawford's arguments will be considered in accordance with Syllabus Point 5 of *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991), which states:

Upon petition, this Court will review all punitive damages awards. In our review of the petition, we will consider the same factors that we require the jury and trial judge to consider, and all petitions must address each and every factor set forth in Syllabus Points 3 and 4 of this case with particularity, summarizing the evidence presented to the jury on the subject or to the trial court at the post-judgment review stage. Assignments of error related to a factor not specifically addressed in the petition will be deemed waived as a matter of state law.

■■■■ Mr. Crawford maintains that the trial court should not have allowed the jury to consider a punitive damages award given the evidence presented during the trial regarding his actions and behavior at the time of the accident. In that regard, Mr. Crawford points out that he was not an intoxicated driver, and there was no evidence that he was speeding when the accident occurred. He says that the evidence only established

11. Mr. Fanning acknowledged on cross-examination that his report was not accurate because the sign indicating a closed lane was not in place. In that regard, he was asked, "Do [you] know that this report isn't completely accurate because all the proper signs were not out?" Mr. Fanning responded, "I do now." Mr. Fanning explained that when he made his report in 2004, he did not know that the closed lane sign was required but that during the litigation of this case, he learned that it should have been in place.

that he acted negligently by looking down for something in his car while entering a construction zone. He argues that simple negligence does not support a punitive damages award.

■ The circumstances that warrant a punitive damages assessment by the jury have long been established by this Court. In Syllabus Point 4 of *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895), this Court held:

> In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.

In this case, the trial court found that a verdict for punitive damages was supported by evidence presented at trial that indicated that Mr. Crawford saw Michael Snyder standing in the roadway when he was several hundred feet away and instead of driving cautiously knowing that he was in a construction zone, he chose to hunt for a "spit cup" for his smokeless tobacco, taking his eyes off the road for a period of nearly six seconds. The trial court found that Mr. Crawford's lack of attention to the roadway was grossly negligent warranting an instruction allowing the jury to consider a punitive damages award. Upon review, this Court cannot say that the trial court erred by finding that Mr. Crawford's conduct was willful and reckless warranting a punitive damages assessment by the jury.

■ Mr. Crawford next argues that the trial court committed reversible error by refusing to allow him to testify regarding his financial status before the jury made its punitive damages assessment. According to Mr. Crawford, the defendants were advised by the court prior to trial that they would be permitted to present evidence regarding their financial status in accordance with Syllabus Point 3 of *Garnes*[12] if the jury indicated on the verdict form that it believed that an award of punitive damages should be considered. Mr. Crawford says that he was not present in the courtroom when the jury returned its verdict in the afternoon of Friday, December 11, 2009. At that point, his counsel requested a continuance until the following Monday so that he could be present to testify, but the trial court refused the request.

Upon review, it was impossible for this Court to discern exactly what occurred on the final day of trial with regard to the jury's consideration of the punitive damages award because portions of the trial transcript are missing from the record submitted to this Court including most of the final day of trial. The pretrial order, which is in the record, did in fact advise the parties that "[if] the jury determines that punitive damages are warranted in this case, a bifurcated proceeding, *beginning immediately after the rendering*

---

12. Syllabus Point 3 of *Garnes* provides:

When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.

(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5) The financial position of the defendant is relevant.

*of the verdict,* will be undertaken, at which time evidence of financial resources will be admissible pursuant to *Garnes v. Fleming.*" (Emphasis added.) The trial court's order denying a new trial simply states that "[t]he punitive damages award did not take into consideration the 'financial position of the defendant,' *Garnes* at Syl. Pt.3, in part, but the reason was Defendant's failure to be present to testify to such matters."

▮▮▮▮ "We frequently have stated that parties are duty-bound to preserve evidence in the record to ensure that this Court may conduct a complete review of the challenged lower court proceedings." *In re Michael Ray T.,* 206 W.Va. 434, 443, 525 S.E.2d 315, 324 (1999). Accordingly, this Court has held that "[t]he responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court." Syllabus Point 6, *Michael Ray T.* Because an inadequate record was presented to this Court, we are precluded from reviewing the precise merits of this alleged error. We note, however, that given the fact that the defendants were advised in the pretrial order that a bifurcated proceeding would begin *immediately* upon the return of a jury verdict indicating that punitive damages should be considered and that they would be able to give testimony regarding their financial condition at that time, it was incumbent upon Mr. Crawford to be present when the jury began its deliberations or at least advise the court in advance that he could not be present so that arrangements could have been made to accommodate his medical condition. It appears that Mr. Crawford did not do so, but instead made a request for a continuance only after the jury returned its verdict. Because Mr. Crawford was well aware that testimony regarding his financial status could be necessary once the jury returned its verdict, the trial court did not abuse its discretion by denying his last minute request for a continuance.

▮▮▮▮ Finally, Mr. Crawford argues that the trial court should have granted a remittur of the punitive damages award in accordance with Syllabus Point 4 of *Garnes,* which states:

When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:

(1) The costs of the litigation;

(2) Any criminal sanctions imposed on the defendant for his conduct;

(3) Any other civil actions against the same defendant, based on the same conduct; and

(4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.

Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the sound discretion of the trial court, any of the above factors may also be presented to the jury.

Mr. Crawford argues that a remittitur should have been granted given the fact that criminal sanctions had been previously imposed against him. Mr. Crawford notes that the jury was unaware of his plea to criminal charges relating to Michael Snyder's death because his testimony was limited at trial. Mr. Crawford also points out that his insurer made multiple offers of settlement on his behalf for the limits of the liability policy available to him beginning almost immediately after the accident occurred. Mr. Crawford contends that these factors warranted a remittitur of the punitive damages award.

▮▮▮ In its order denying Mr. Crawford's motion for a new trial, the trial court conducted a *Garnes* analysis and concluded that the jury's punitive damages verdict was not excessive. With regard to the first *Garnes* factor requiring punitive damages to "bear a

reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred," the court noted that Mr. Crawford's gross negligence resulted in one person's death and could have led to serious injury or death to others, i.e., the other persons in the car[13] or the other workers in the construction zone. The trial court also found that the punitive damages assessment was not excessive given the reprehensibility of Mr. Crawford's conduct and, further, that the verdict did bear a reasonable relationship to the compensable damages. In that regard, the punitive damages were less than one-eighth of the compensatory damages and, therefore, were well within the accepted ratio of punitive damages to compensatory damages.[14] The court further found that the punitive damages award was not excessive given that the costs of the litigation were high as the plaintiffs utilized three expert witnesses and took numerous depositions. In addition, the court found that the punitive damages were not excessive given the criminal sanction imposed. The court noted that while Mr. Crawford was charged with negligent homicide, he negotiated a no contest plea and only served thirty days in jail for Michael Snyder's death. Finally, the court found that the punitive damages were appropriate to "encourage fair and reasonable settlements when a clear wrong has been committed." Based on these findings, the trial court denied Mr. Crawford's request for a new trial or a remittitur. Upon consideration and review, we find no merit to Mr. Crawford's argument. The trial court completed a thorough *Garnes* analysis and its findings are supported by the record.[15]

## IV.

## CONCLUSION

For the reasons set forth above, the final orders of the Circuit Court of Jefferson County entered on January 12, 2010, and April 12, 2010, are affirmed.

Affirmed.

---

13. Mr. Crawford was transporting a child and a cancer patient.

14. This Court has held:
 The outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1. However, when the defendant has acted with actual evil intention, much higher ratios are not *per se* unconstitutional.
 Syllabus Point 15, *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

15. Mr. Crawford also asserts that the trial court erred by allowing an entry on the verdict form for loss of solace separate from the entry on the verdict form for sorrow and mental anguish. He maintains that sorrow, mental anguish, and solace are actually one item of damages. A review of the record shows that Mr. Crawford never objected to the verdict form at any time during the course of the trial. This Court has held that "'[a]bsent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form.' Syl. Pt. 2, *Combs v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1999)." Syllabus Point 3, *State ex rel. Valley Radiology, Inc. v. Gaughan*, 220 W.Va. 73, 640 S.E.2d 136 (2006). Because Mr. Crawford never objected to the verdict form, he waived this assignment of error.