**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2016 Term**

_____

No. 14-1037

_____

**FILED**
**April 13, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Respondent,

**V.**

**DONALD DUNN,**
Petitioner.

_____

**Appeal from the Circuit Court of Raleigh County**
**Honorable, John A. Hutchison, Judge**
**Criminal Action No. 13-F-225**

**AFFIRMED**
_____

**Submitted:  April 5, 2016**
**Filed:  April 13, 2016**

David L. White
Charleston, West Virginia
Attorney for Petitioner

Kristen Keller
Raleigh County Prosecuting
Attorney
Beckley, West Virginia
Attorney for Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.    "The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made." Syllabus point 1, *State v. Jones*, 84 W. Va. 85, 99 S.E. 271 (1919).

2.    "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syllabus point 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991).

3.    "Under Rule 611(a) of the West Virginia Rules of Evidence [2014], the trial judge clearly has discretion to 'exercise reasonable control over the mode and order of [examining] witnesses and presenting evidence. . . .'; and in doing so, he must balance the fairness to both parties." Syllabus point 2, *Gable v. Kroger Co.*, 186 W. Va. 62, 410 S.E.2d 701(1991).

4. "The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syllabus point 8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989).

**Davis, Justice:**

This a criminal appeal by Petitioner, Donald Dunn, from a judgment of the Circuit Court of Raleigh County. Mr. Dunn was convicted of the first degree murder of his stepfather and sentenced to life in prison without mercy. He was also convicted of attempted murder of his mother and sentenced to three to eighteen years in prison. The sentences were ordered to run consecutively. Mr. Dunn testified at trial and admitted to committing the crimes. Here, Mr. Dunn has asserted the following grounds as error: (1) denial of a continuance, (2) excluding certain testimony, (3) admitting evidence of jail telephone calls, (4) refusing to grant a mistrial, and (5) refusing to give a jury instruction on mercy. After a careful review of the briefs, the record submitted on appeal and listening to the argument of the parties, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are centered around Mr. Dunn's failed attempt to obtain a four year college degree. Mr. Dunn initially attended New River Community College. After two years at the college, he transferred to Marshall University in 2010. After one semester at Marshall, Mr. Dunn dropped out because of poor grades. Mr. Dunn did not tell

2

his parents, Mark and Johanna McDermott,[1] that he had dropped out of college. For approximately two years, during alleged breaks from college, Mr. Dunn would return to his parents' home in Stanaford, West Virginia. At some point, Mr. Dunn informed his parents that he was going to graduate on May 25, 2013. However, a few weeks before that date, Mr. Dunn began concocting a plan to kill both of his parents. He did so because he "thought it would be easier to stage the murder suicide than it was for [him] to tell 'em [he dropped out of college]."

Mr. Dunn decided to stage the murder at his parents' home and make it appear as though his mother killed his stepfather and then killed herself. To do this, he planned to first shoot his stepfather twice and then shoot his mother once in the head. Mr. Dunn had written a suicide note for his mother in which she confessed to killing her husband. The handgun that Mr. Dunn was planning to use was taken from his parents' bedroom about two weeks before the murders were to take place. Because Mr. Dunn wanted to make it appear like a murder-suicide, he loaded only three bullets in the gun.

On the morning of Mr. Dunn's alleged graduation, May 25, his mother left the home on an errand. While she was away, Mr. Dunn killed his stepfather by shooting him twice in the head as he sat in a chair reading a book. When his mother returned home, Mr.

---

[1]Mr. McDermott was Mr. Dunn's stepfather.

Dunn met her outside and told her that he had a surprise for her. Mr. Dunn then walked his mother into the home and told her to sit down and close her eyes. After his mother complied, Mr. Dunn placed the gun to her head and pulled the trigger. The gun misfired and the bullet jammed in the gun. Mr. Dunn then told his mother that he had killed his stepfather, and that he had dropped out of college. Mr. Dunn's mother told him that she would tell the police she had killed her husband. Mr. Dunn agreed to this and allowed his mother to dial 911. While on the phone, Mrs. McDermott informed the 911 dispatcher that she had killed her husband.

When the police arrived at the crime scene, Mrs. McDermott told the police that she had killed her husband. Mrs. McDermott was then placed in a police car while the crime scene was being investigated. While in the police car, Mrs. McDermott informed the police that Mr. Dunn killed her husband and had attempted to kill her. Mr. Dunn and his mother were eventually taken to police headquarters in separate police cars. When Mr. Dunn arrived at police headquarters, he gave a statement initially denying any involvement with the killing. However, after he was told that his mother accused him of the killing, he confessed to killing his stepfather and attempting to kill his mother.

4

In June of 2013, Mr. Dunn was indicted on charges of first degree murder and attempted murder.[2] The case was tried before a jury in August of 2014.[3] During the trial, Mr. Dunn testified and confessed to the jury that he killed his stepfather and attempted to kill his mother. Specifically, on direct examination, Mr. Dunn responded to questions by defense counsel as follows:

Q. You shot your stepfather and killed him?

A. Yes, sir.

Q. And tried to kill your mom?

A. Yes, sir.

The jury returned a verdict convicting Mr. Dunn of first degree murder through the use of a firearm. The jury did not recommend mercy. Mr. Dunn also was convicted by the jury of attempted murder through the use of a firearm. The trial court sentenced Mr. Dunn to life in prison without parole and a consecutive sentence of three to eighteen years in prison. This appeal followed.

## II.

## STANDARD OF REVIEW

---

[2]The indictment also separately charged Mr. Dunn with using a firearm to commit murder and attempted murder.

[3]The trial was unitary and not bifurcated into a guilt phase and mercy phase proceeding.

5

Mr. Dunn has asserted five assignments of error. The issues presented have specific review standards. Therefore, we dispense with setting out a general standard of review. Specific standards of review will be discussed separately as we address each assignment of error.

## III.

## DISCUSSION

### A. *Denial of Continuance*

The first issue raised by Mr. Dunn is that the trial court committed error in denying his motion for a continuance of the trial. According to Mr. Dunn's brief, he requested a continuance (1) because the State untimely disclosed it would use evidence from over 400 telephone calls he made while in jail, and (2) because he was under the influence of a narcotic pain medication. We will address each issue separately.

As an initial matter, we note that the standard of review with respect to a determination regarding a motion for continuance is well established. We have long held that,

> [t]he granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made.

Syl. pt. 1, *State v. Jones*, 84 W. Va. 85, 99 S.E. 271 (1919). *See also* Syl. pt. 2 *State v. Bush*, 163 W. Va. 168, 255 S.E.2d 539 (1979) ("A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion.").

**1.  Untimely disclosure of telephone calls**.  During a pretrial hearing held on July 28, 2014, the State informed the trial court that it was seeking an order that authorized disclosure of the recordings of telephone calls Mr. Dunn had while in jail awaiting trial.[4] Defense counsel made an oral motion during the hearing asking for a brief continuance so that he could have time to review the telephone calls.[5]  At the time of the oral motion, it was not known how many phone calls Mr. Dunn had made.  In his brief, Mr. Dunn has pointed out that over 400 telephone conversations were recorded.[6]

In denying the motion for continuance, the trial court noted that defense counsel only sought a "brief" continuance.  However, the court pointed out that, because its

[4]Mr. Dunn was in jail for over one year before the trial began.

[5]The State points out that Mr. Dunn had filed a written motion for a continuance that did not cite to the telephone calls as a basis for a continuance.  The State, however, has not argued that the issue of the telephone calls is not properly before this Court. Indeed, the record demonstrates that the circuit court considered the issue on the merits and there was no objection by the State below that the issue was improperly presented as an oral motion.

[6]Inmates are allowed to talk on the telephone for only fifteen minutes at a time.

7

calendar was set with previously scheduled trials and other matters, a continuance would not be brief. Instead, the court found that it would be at least five to six months before the case could be rescheduled for trial. Consequently, the court denied the motion. In doing so, the court made clear that if an issue arose involving the telephone calls, "I might stop a day to give you some time, but I am not going to continue this case *ad infinitum*." Based upon the particular facts of this case, we do not believe the court abused its discretion in denying a continuance to allow defense counsel to review the telephone calls.

We noted in *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996), that "[t]rial judges necessarily require a great deal of latitude in scheduling trials . . . , not the least of which is that of assembling the witnesses and lawyers at the same time. This burden counsels against continuances except for compelling reasons." *Tiffany Marie*, 196 W. Va. at 237 n.24, 470 S.E.2d at 191 n.24 (internal quotations and citation omitted). We also noted in *State v. Bush*, *supra*, several factors that may be considered in determining whether a trial court abused its discretion in denying a defendant a continuance. For purposes of this case, the most important and relevant factor cited by *Bush* is a consideration of "the likelihood of prejudice from the denial." 163 W. Va. at 178, 255 S.E.2d at 545 (citation omitted). We crystalized the prejudice requirement in Syllabus point 1 of *State v. Schrader*, 172 W. Va. 1, 302 S.E.2d 70 (1982), *overruled on other grounds by State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), as follows: "When the failure to

grant a continuance causes no actual prejudice, such a refusal will not constitute reversible error." *See also United States v. Mitchell*, 498 F. App'x 339, 341 (4th Cir. 2012) ("Even if the defendant can demonstrate an abuse of discretion, he also must show that the denial [of a continuance] specifically prejudiced [his] case.") (internal quotations and citation omitted); *People v. Harris*, 165 Cal. App. 3d 324, 330, 211 Cal. Rptr. 493, 496 (1985) ("Yet no showing has been made in the trial court or on appeal that the denial of the continuance resulted in actual prejudice.").

In his brief, Mr. Dunn has identified three purported prejudicial issues that were brought out during the trial resulting from the telephone calls. The first issue pointed out by Mr. Dunn is that the State asked him during cross-examination whether "you and your mother had over 400 telephone calls[.]" Mr. Dunn responded yes to the question. Second, the State asked Mr. Dunn about the following comment he made to his mother on the telephone: "I may as well cost the State as much money as humanly possible [by going to trial]." Mr. Dunn informed the jury that the comment was a joke. Third, Mr. Dunn also was asked about comments he made concerning escaping from jail. Mr. Dunn informed the jury that this also was a joke.

We do not find that the three issues advanced by Mr. Dunn establish prejudice from the denial of his request for a continuance. *See Bush*, 163 W. Va. at 181, 255 S.E.2d

9

at 546 ("The likelihood of prejudice stemming from the denial of the continuance is quite high."). First, Mr. Dunn was able to respond to each of the questions asked of him. Second, none of the three issues raised from the questions prejudiced the determination of the critical issue in this case–Mr. Dunn's guilt in killing his stepfather and attempting to kill his mother. On this issue, Mr. Dunn informed the jury that he did, in fact, commit the crimes. Third, we also do not believe the issues asserted by Mr. Dunn to show prejudice had any appreciable impact on the issue of mercy. Fourth, and most importantly, Mr. Dunn has failed to identify anything he could not do concerning his defense that resulted from the denial of the continuance. For example, Mr. Dunn did not argue or present any evidence to show that the denial of his motion for a continuance prevented him from calling a witness,[7] introducing evidence,[8] preparing a response to any question actually asked regarding the telephone calls, or prevented him from preparing his defense in general.

---

[7]*See* Syl. pt. 1, *State v. Bailey*, 103 W. Va. 605, 138 S.E. 202 (1927) ("An appellate court will not reverse because of refusal to grant a continuance because of absent witnesses, unless it is clear that the trial court has abused its discretion to the prejudice of the party who desired it.").

[8]*See State v. Holcomb*, 178 W. Va. 455, 463, 360 S.E.2d 232, 240 (1987) ("[T]he State argues that there was no prejudice to the appellant in the court's denial of the continuance for the purpose of offering evidence of mitigation. . . . We disagree. We believe that the court's admitted failure to afford the appellant an opportunity to present evidence of mitigating circumstances warranting imposition of concurrent sentences was clear error which invalidated the sentencing process.").

In *United States v. Howard*, 540 F.3d 905 (8th Cir. 2008), the Eighth Circuit addressed the issue of whether a defendant was prejudiced because the district court refused to grant his motion for a continuance to review the recordings of telephone calls he made while in jail. The calls totaled 300 hours of conversation. Although the facts of *Howard* are distinguishable from the instant case, the principal of law relied upon to resolve the issue corresponds to our current analysis. In affirming the denial of the motion for a continuance, the Eighth Circuit ultimately concluded that

> Howard argues that . . . his trial counsel was unable to focus adequately on the trial after the recordings were produced. . . .
>
> Howard cannot show that he was prejudiced in any way by the timing of the production of this material. Howard was aware of the content of the late-produced recordings because they were recordings of his own conversations . . . .
>
> . . . .
>
> Because these circumstances fail to demonstrate any prejudice to Howard or any other compelling reason why a continuance should have been granted, the district court did not err in denying Howard's request.

*Howard*, 540 F.3d at 907.

In sum, "we conclude that the trial court's refusal to grant [Mr. Dunn a] continuance did not constitute an abuse of discretion." *State v. Davis*, 176 W. Va. 454, 461, 345 S.E.2d 549, 556 (1986). *See also State v. Sheppard*, 172 W. Va. 656, 668, 310 S.E.2d 173, 185 (1983) ("[T]here was no injury or prejudice to the rights of the appellant and any

11

error in the trial court's refusal to grant a continuance in this instance must be viewed as harmless.").

**2. Under influence of narcotic pain medication**. Mr. Dunn also sought a continuance of the trial on the grounds that he was under the influence of "a high-powered, narcotic pain medication."[9] The use of the medication arose about a week and a half before the trial was to begin, when Mr. Dunn had surgery to replace a plate in his right arm. During the pretrial hearing on the medication issue, defense counsel suggested that Mr. Dunn would be on pain medication during the trial and that he "would be hesitant to go to trial with [Mr. Dunn] taking the pain medication at this time."

The State points out that during the pretrial hearing there was no medical evidence produced by Mr. Dunn to support the suggestion that he might not be competent to stand trial because of pain medication. Moreover, during the pretrial hearing, the State informed the trial court that it was in the process of obtaining Mr. Dunn's medical records, and that after those records were obtained a determination could be made as to "whether or not the defendant's surgery would affect his competency to stand trial at this time." In denying the motion for continuance, the trial court made the following finding regarding Mr. Dunn's awareness at the pretrial hearing:

---

[9]The pain medication in question was Lortab.

12

THE COURT: I understand your position. The Court will make a finding that, based upon the Court's observations of the defendant today, that the Court did not observe the defendant to be, in any way, sleepy, non-responsive, and/or he did not appear to the Court, through my observations, to be impaired today. So I'll make that finding on the record and we can go forward as it were.

The State also has pointed out that, on the day before trial, a hearing was held at which Mr. Dunn called a medical expert to testify about his alleged use of synthetic marijuana at the time of the crimes. During that hearing the medical expert confirmed his earlier opinion that Mr. Dunn was competent to stand trial. Further, the State noted in its brief that, after the pre-trial hearing, Mr. Dunn did not raise the issue of pain medication again until he filed his post-conviction motion for new trial.

The facts underlying this issue are similar to those considered in *Smalls v. State*, 242 Ga. App. 39, 528 S.E.2d 560 (2000). In *Smalls*, the defendant was charged with burglary. Prior to trial, the defendant filed a motion for a continuance on the grounds that, while awaiting trial, he "had been involved in an automobile accident . . . and . . . was taking pain medication which affected him physically and mentally and which prevented him from fully participating in his defense at trial." *Smalls*, 242 Ga. App. at 39, 528 S.E.2d at 562. The trial court denied the motion and a jury convicted the defendant. On appeal the defendant argued that the trial court committed error in denying his motion for continuance. The appellate court disagreed as follows:

13

> Smalls presented no evidence regarding the automobile accident or his resulting medical treatment at the time he made his motion for continuance. . . .   Further, the trial court observed Smalls' demeanor in court for two days before ruling on the continuance; it also observed Smalls during the trial and sentencing. . . .  Under the circumstances, the trial court did not abuse its discretion.

*Smalls*, 242 Ga. App. at 40, 528 S.E.2d at 562-63 (citations omitted).  *See also Mack v. State*, 736 So. 2d 664, 671 (Ala. Crim. App. 1998) ("Here, the trial court did not find Mack to be so drugged as to be beyond aiding in his defense. The trial court stated that Mack 'seemed quite alert and able to participate' during voir dire of the venire panels. . . .  We find no error in the denial of Mack's motion for a continuance."); *State v. Meranda*, No. 794, 1992 WL 129379, at *2 (Ohio Ct. App. June 11, 1992) ("Although we recognize appellant may have been suffering from pain and discomfort during the trial below, the record is devoid of any evidence indicating appellant was physically unable to appear in court or assist in his defense, or that his appearance in court endangered his health."); *Thomas v. State*, 312 S.W.3d 732, 737 (Tex. Ct. App. 2009) ("appellant was able to communicate with his attorney on the record, and the trial court determined that appellant seemed 'very able to answer . . . questions.'").

In this appeal, Mr. Dunn has not pointed to any evidence to show that he was suffering from an impairment as a result of taking pain medication prior to, and during, the trial.  The record is clear in demonstrating that the trial court gave Mr. Dunn an opportunity

to present such evidence prior to the jury verdict. Having failed to provide such evidence, Mr. Dunn cannot demonstrate any prejudice from the trial court's denial of his motion for a continuance because of his use of pain medication. *See* Syl. pt. 3, *State v. Andriotto*, 167 W. Va. 501, 280 S.E.2d 131 (1981) ("Where appellant neither alleges nor demonstrates any actual prejudice as a result of the trial court's refusal to grant a continuance, that refusal will not constitute reversible error.").

### B. Excluding Certain Testimony

Mr. Dunn's next assignment of error also is couched in two parts. First, Mr. Dunn argues that the trial court should have allowed certain testimony by defense psychologist Dr. Clifton R. Hudson regarding synthetic marijuana. Second, it is argued that the trial court erroneously precluded defense counsel from mentioning during opening statements that Mr. Dunn would testify about his use of synthetic marijuana.[10] We address these issues separately.

---

[10]Petitioner's caption of this assignment of error also stated that the trial court "erred in precluding evidence generally relating to" synthetic marijuana. Although this issue was set out as part of an assignment of error, it was not discussed in the brief or reply brief. We have long held that "[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syl. pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981). *See also State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

15

**1. Excluding expert testimony**.  Mr. Dunn alleged that he used synthetic marijuana around the time of the crimes in this case.[11]  As a consequence, Mr. Dunn sought to introduce expert testimony through Dr. Hudson as to the effects of synthetic marijuana on his conduct at the time of the commission of the crimes. The trial court precluded the testimony.  This Court has long held that "[t]he admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong."  Syl. pt. 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991).  *Accord*, *State v. Lambert*, 236 W. Va. 80, __, 777 S.E.2d 649, 664 (2015).

We begin by noting that the question of whether Dr. Hudson qualified as an expert under Rule 702 of the West Virginia Rules of Evidence is not before us.[12]  Further, Mr. Dunn has acknowledged that Dr. Hudson opined that he "was competent to stand trial and that he did not suffer from a mental disease or defect at the time of the offense."  Even

[11]The record does not disclose what chemicals were used by the manufacturer of the synthetic marijuana used by Mr. Dunn.  However, as a general matter it has been said that "[s]ynthetic marijuana is the name of the product consisting of plant material treated with synthetic cannabinoid."  *State v. Goggin*, 157 Idaho 1, 3 n.1, 333 P.3d 112, 114 n.1 (2014).

[12]At the time of Mr. Dunn's trial, Rule 702 stated: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Subsequent to Mr. Dunn's trial, an amendment to Rule 702 became effective.  The amendment has no effect on this case.

though Dr. Hudson found that Mr. Dunn did not have a mental disease or defect at the time of the crime, Mr. Dunn wanted Dr. Hudson to inform the jury "that it is reasonable to state that the consumption of synthetic marijuana affected his capacity for rational thought at the time of the offense." The trial court rejected this testimony on the following grounds:

> THE COURT: . . . But when queried, Dr. Hudson affirmatively said that he cannot–he would not change his position that, in fact, Mr. Dunn did not suffer from diminished capacity. Having said that, the testimony regarding the synthetic marijuana, I believe is, under [Rule] 403, far more prejudicial to the case than it is helpful, that it is–the discussion is not relevant, under [Rule] 104, to the issues before the Court.
>
> The issue before the Court would be does Mr. Dunn suffer from a mental defect or mental illness which would have rendered him, at the time of the crime, incapable of forming the necessary intent? Dr. Hudson has said he did not suffer from that mental defect. And then to argue that it may have had an affect on his ability to think and reason is–and for me to allow that creates a real conflict, or potential conflict. I believe it's going to confuse the jury and, therefore, it doesn't go to the–the evidence does not go to a particular element which the State must prove; therefore, it's not coming in.
>
> As I said yesterday, the evidence may have been admissible in the event this were a bifurcated trial, because it may have gone to the issue of whether or not the jury would or would not grant mercy in this case, in the event there is a conviction. But this is a unitary trial and, because of that . . ., it's going to . . . confuse the jurors and . . . it's not probative of anything, so it's not coming in.

Mr. Dunn argues that the trial court's reasoning was inconsistent with an observation made in footnote 7 in *State v. Joseph*, 214 W. Va. 525, 590 S.E.2d 718 (2003).

17

Neither footnote 7 of *Joseph,* nor any language in that case, supports Mr. Dunn's contention that the trial court abused its discretion in precluding Dr. Hudson's testimony on the possible effects of synthetic marijuana.

The defendant in *Joseph* was convicted of first degree murder with a recommendation of mercy. In his appeal, the defendant argued that the circuit court erred in excluding expert testimony on the issue of diminished capacity. In resolving the matter, this Court expressly recognized the diminished capacity defense in West Virginia.[13] After doing so, the opinion looked at the evidence the defendant sought to introduce on the issue of diminished capacity. First, the defendant had expert testimony from a psychologist, Dr. Robert W. Solomon, that indicated the defendant suffered from a mental disease at the time of the commission of the offense. The defendant also had evidence from two physicians that

---

[13]We recognized the diminished capacity defense in Syllabus point 3 of *State v. Joseph* as follows:

> The diminished capacity defense is available in West Virginia to permit a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged. This defense is asserted ordinarily when the offense charged is a crime for which there is a lesser included offense. This is so because the successful use of this defense renders the defendant not guilty of the particular crime charged, but does not preclude a conviction for a lesser included offense.

213 W. Va. 525, 590 S.E.2d 718 (2003).

18

had treated him. One of those physicians, Dr. John Beard, was a doctor of osteopathy who had treated the defendant at Sharpe Hospital due to threatening behavior and substance abuse following a DUI arrest. The second physician, Dr. Mark A. Hughes, was a psychiatrist who saw the defendant professionally on a number of occasions. The opinion in the case found that Dr. Solomon's opinion was sufficient to send the diminished capacity defense to the jury. In footnote 7 of the opinion we commented upon the relevancy of the testimony by the other two physicians:

> We likewise find that the testimony of Drs. Beard and Hughes should have been admitted insofar as it established that Mr. Joseph suffered from a mental impairment for which he required hospitalization and treatment. While the testimony provided by these two doctors, in and of itself, was inadequate to negate the State's evidence of the intent element of the murder for which Mr. Joseph was charged, their testimony was relevant in establishing that Mr. Joseph suffered from a mental impairment for which he was hospitalized a short time prior to committing the murder, and which affected his cognitive abilities, *i.e.* his ability to reason and think things through.

*Joseph*, 214 W. Va. at 534 n.7, 590 S.E.2d at 727 n.7.

Other than cite to the above quoted language from footnote 7 of *Joseph*, Mr. Dunn's brief does not set out any discussion on how this language supports the admission of testimony by Dr. Hudson on the issue of synthetic marijuana. No discussion is provided because the footnote has no application to this case. First, Dr. Hudson found Mr. Dunn did not suffer from a mental disease or defect. In *Joseph*, Dr. Solomon opined that the defendant

suffered from a mental defect. Second, the testimony of Drs. Beard and Hughes was found

to be admissible on the issue "guilt," as support for Dr. Solomon's opinion that the defendant

had a mental defect. Mr. Dunn wanted to undermine, not support, Dr. Hudson's opinion that

he did not have a mental disease or defect, through testimony by Dr. Hudson that he suffered

some type of impairment from synthetic marijuana. Nothing in the decision in *Joseph* allows

such testimony.

The State points out that the trial court's decision is consistent with *State v.*

*Berry*, 227 W. Va. 221, 707 S.E.2d 831 (2011). In *Berry,* the defendant was convicted of

two counts of first-degree murder without mercy. The defendant had a unitary trial at which

he testified and admitted to killing the victims. During the trial, the defendant wanted to put

on evidence that he suffered from social anxiety. The trial court informed the defendant that

the evidence would not be allowed in a unitary trial because there was no expert testimony

that he suffered from diminished capacity. The trial court invited the defendant to file a

motion to bifurcate the trial so that the social anxiety evidence could be presented during the

mercy phase. The defendant did not file a motion to bifurcate the trial. On appeal, the

defendant argued that the evidence should have been allowed in a unitary trial. We

disagreed.

> In the instant case, Mr. Berry sought to introduce
> evidence on the issue of mercy, when such evidence was ruled
> inadmissible as to the issue of guilt. This situation falls
> precisely under [*State v. LaRock*, 196 W. Va. 294, 470 S.E.2d

20

613 (1996)]. *LaRock* recognized that situations could arise where evidence would be inadmissible on the issue of guilt, but admissible on the issue of mercy. When such a situation arises, bifurcation should be used.

At the start of the trial, the court gave Mr. Berry an opportunity to introduce his social anxiety evidence during a separate mercy phase proceeding, as required under *LaRock*. Mr. Berry refused to avail himself of such a proceeding when it was offered. . . . Under these facts, we find Mr. Berry waived his right to present the social anxiety evidence by not timely accepting the trial court's offer to bifurcate.

*Berry*, 227 W. Va. at 226-27, 707 S.E.2d at 836-37 (footnotes omitted).

We agree with the State that *Berry* controls the resolution of Mr. Dunn's efforts to have Dr. Hudson inform the jury that his use of synthetic marijuana affected his ability to think rationally at the time of the offense. Under *Berry*, the trial court had discretion to preclude this evidence at a unitary trial. It is clear from the record that the trial court informed Mr. Dunn several times that this evidence would be admissible at a bifurcated mercy phase proceeding. The State points out that, "[e]ven after the trial court repeatedly held that Dr. Hudson's testimony would be inadmissible in a unitary trial, [Mr.] Dunn made no motion for bifurcation." Insofar as Mr. Dunn did not seek to bifurcate his trial, he waived his right to present evidence about the possible effects of synthetic marijuana.[14]

_____

[14]A trial court does not have a duty to sua sponte order bifurcation. *See LaRock*, 196 W. Va. at 314, 470 S.E.2d at 633 ("The motion to bifurcate may be made by either the prosecution or the defense. The burden of persuasion is placed upon the shoulders (continued...)

21

**2. Limiting defense counsel's opening statement**. Mr. Dunn has also alleged that it was error for the trial court to preclude defense counsel from mentioning, during opening statements, Mr. Dunn's anticipated testimony regarding his synthetic marijuana use. Specifically, defense counsel wanted to inform the jury during opening statements "that Mr. Dunn would testify about his synthetic marijuana use, its impact on him, and its contribution to his behavior at the critical moments which were the subject of the trial." The State objected to these remarks on the grounds that Mr. Dunn could elect to not testify.[15] The trial court determined that since Mr. Dunn was the only person who could properly introduce evidence of his alleged synthetic marijuana use, it would be unfair to allow defense counsel to talk about this evidence before Mr. Dunn actually exercised his right to testify.

In reviewing a ruling of a trial court concerning the order of presentation of evidence, it has been recognized that: "[T]he order of proof lies within the sound discretion of the trial court, and appellate courts will not interfere with the trial court's ruling unless there is a clear abuse of discretion." Louis J. Palmer, Jr., Robin Jean Davis and Franklin D. Cleckley, Vol. 1 *Handbook on Evidence for West Virginia Lawyers*, § 611(a), at 901 (6th ed

---

[14](...continued)
of the party moving for bifurcation.").

[15]The State has argued that this issue was inadequately briefed and therefore this Court should not address the matter. We disagree. The issue has been fairly raised in the brief, even though, as will be shown, it fails to demonstrate any prejudice.

2015) (footnote omitted). *See also Crawford v. Snyder*, 228 W. Va. 304, 307, 719 S.E.2d 774, 777 (2011) ("The departure from the usual order of evidence introduction does not constitute error unless it is an abuse of the trial court's discretion."). This Court has previously held that, "under Rule 611(a) of the West Virginia Rules of Evidence [2014], the trial judge clearly has discretion to 'exercise reasonable control over the mode and order of [examining] witnesses and presenting evidence. . . .'; and in doing so, he must balance the fairness to both parties." Syl. pt. 2, *Gable v. Kroger Co.*, 186 W. Va. 62, 410 S.E.2d 701(1991). *See also Massey v. State*, 263 Ga. 379, 380, 434 S.E.2d 467, 468-69 (1993) ("the trial court has broad discretion to control the content of the opening statements of both parties."); *State v. Harris*, 731 S.W.2d 846, 849 (Mo. Ct. App. 1987) ("The scope and manner of opening statement is largely within the discretion of the trial court."); *United States v. Hampton*, 458 F.2d 29, 30 (10th Cir. 1972) ("The trial court may, in the exercise of its discretion, control the scope and extent of the opening statement.").

The purpose of an opening statement is to provide the jury with an informational roadmap of the evidence a party expects to present. *See State v. Hurst*, 606 So. 2d 965, 970 (La. Ct. App. 1992) ("When defense counsel avails himself of the opportunity to make an opening statement, the statement must be confined to an explanation of the nature of the defense and the evidence by which he expects to establish it."). An opening statement "is not a test of sufficiency of the evidence but a device wherein the nature of the case, the

23

anticipated evidence and its significance is generally presented to the court and jury." *State v. Robinson*, 831 S.W.2d 667, 670 (Mo. Ct. App. 1992). It has been recognized that, while a defendant has a right to have his counsel make an opening statement, "the character and extent of such statement are subject to the control of the trial court." *Norton v. State*, 564 S.W.2d 714, 718 (Tex. Crim. App. 1978) (internal quotations and citation omitted). *See also State v. Schimmel*, 409 N.W.2d 335, 342 (N.D. 1987) ("the trial court maintains control over the substance and vigor of the lawyers' opening and closing statements.").

In the instant case, the trial court was concerned about defense counsel informing the jury that Mr. Dunn would testify about the effects of his use of synthetic marijuana when the possibility existed that Mr. Dunn might elect to not testify. Equally important to the trial court's ruling was the fact that, had Mr. Dunn chosen to not testify, the issue of his use of synthetic marijuana would not have been presented to the jury by any other witness. It was this latter consideration that appears to have substantially influenced the trial court's decision. Courts facing a similar consideration have recognized that "[c]ounsel should not in an opening statement refer to matters which under no circumstances could be introduced in evidence, for the purpose of influencing the jury. . . ." *Baker Matthews Lumber Co. v. Lincoln Furniture Mfg. Co.*, 148 Va. 413, 420, 139 S.E. 254, 256 (1927). *See also Stormes v. State*, No. CACR 97-1259, 2000 WL 264347, at *1 (Ark. Ct. App. March 8, 2000) ("[T]he judge was correct in limiting defense counsel's opening

24

statement by not allowing him to refer to statements made by a person who would not testify"); *People v. Frazier*, 291 A.D.2d 211, 212, 738 N.Y.S.2d 16, 18 (2002) ("The court imposed reasonable restrictions on defense counsel's opening statement. . . . [T]he only restriction imposed by the court was a reasonable preclusion of the naming of specific prosecution witnesses, *where there was a serious question as to which witnesses would actually testify* and where references to ultimately uncalled witnesses might mislead the jury.") (emphasis added).

The issue of limiting opening statements because of the possibility that a defendant may not testify was addressed in *People v. Garrett*, NO. 4-13-0856, 2015 WL 8170277 (Il. App. Ct. Dec. 4, 2015). The defendant in *Garrett* was prosecuted for aggravated battery of a correctional officer. Prior to trial, defense counsel indicated that the defendant would testify and that he would proffer a self-defense theory. The trial court informed defense counsel that he could not mention the self-defense theory to the jury during opening statements, because the defendant may not testify:

> THE COURT: That's correct. I'm not saying that you can't raise self-defense. I'm just saying that you can't raise it in your opening statement and then have your client decide he doesn't want to testify and then have that out in front of a jury with no way of addressing it. We've had that issue before. I'm not going to have it again.

*Garrett*, 2015 WL 8170277, at *1.  After a jury convicted the defendant, he argued on appeal that the trial court committed error in limiting his opening statement.  The appellate court addressed the matter as follows:

> In this case, the question of whether the trial court abused its discretion in limiting defendant's opening statement is close. While defense counsel articulated the intention defendant would testify, the court limited discussion of self-defense during opening statements because of a previous experience of an accused introducing self-defense but choosing not to testify later. . . .  Here, there were no other witnesses to provide evidence supporting a theory of self-defense.  The likelihood of defendant following through with his promise to the court and the jury to testify was high.  It is thus arguable the trial court should have allowed the comments because it could not have foreseen the defendant would not testify. . . .
>
> We need not decide whether the trial court abused its discretion, because we find defendant has not established prejudice. . . .  Although defendant was unable to raise the theory in his opening statement, he was able to introduce his theory through his own testimony, in closing argument before the jury, and in jury instructions.

*Garrett*, 2015 WL 8170277, at *5-6 (internal citations omitted).  *See also Maciel v. Carter*, 22 F. Supp. 2d 843, 854 (N.D. Ill. 1998) ("Even assuming that the trial judge erred by excluding reference to the February 3 incident during defense counsel's opening statement, this alleged error in no way made Maciel's conviction 'fundamentally unfair'"); *State v. Pedroza-Perez*, No. 2 CA-CR 2014-0168, 2015 WL 4757271, at *3 (Ariz. Ct. App. Aug. 12, 2015) ("[I]f Pedroza-Perez had discussed duress in his opening statement and later exercised his right to not testify, the state would have been unable to respond to his

assertion. Because of these unique circumstances, the trial court acted within its discretion when limiting the scope of Pedroza-Perez's opening statement.").

We believe that the decision in this case should be resolved consistent with *Garret*. That is, we need not decide whether the trial court abused its discretion in limiting Mr. Dunn's opening statement, because Mr. Dunn has failed to demonstrate any prejudice from the ruling. The record is clear that Mr. Dunn testified at trial and he was allowed to inform the jury that he used synthetic marijuana around the time of the crimes. Moreover, defense counsel was not prevented from using this evidence during closing arguments.[16] We therefore find no prejudicial error in the limitation imposed on Mr. Dunn's opening statement.

### C. Admitting Evidence of Telephone Calls

The next issue presented by Mr. Dunn involves the States use of telephone calls Mr. Dunn made while in jail awaiting trial. Mr. Dunn's argument regarding this issue is vague at best. It appears that Mr. Dunn is alleging "that the State failed to lay a proper foundation for obtaining the materials."[17] Our review of the trial court's ruling on this issue

---

[16]The State notes that defense counsel did not mention the synthetic marijuana evidence during closing arguments.

[17]Mr. Dunn also contends that the "process whereby inmate telephone calls are monitored and recorded–and disclosed and used as evidence–is unconstitutional[.]" He

(continued...)

27

is for an abuse of discretion. *See State v. Blevins*, 231 W. Va. 135, 150, 744 S.E.2d 245, 260 (2013) ("This Court's review of the record reveals no abuse of discretion in the circuit court's decision to permit introduction of the telephone conversations.").

Pursuant to W. Va. Code § 31-20-5e (2015) (Repl. Vol. 2015), jails are permitted to monitor, intercept, record and disclose non-privileged telephone calls placed or received by inmates. The statute requires all inmates be notified in writing about access to their telephone conversations, and notice must be placed near every telephone that is monitored. *See State v. Bouie*, 235 W. Va. 709, 719, 776 S.E.2d 606, 616 (2015) ("It is therefore plain that Bouie was presented with actual notice in advance of making the inculpatory statements that anything he might say on the prison phones would be monitored and recorded. Bouie ignored the warnings at his own peril."). In the instant proceeding, during a pretrial hearing, defense counsel raised the issue of the proper procedure for obtaining Mr. Dunn's recorded telephone conversations. Specifically, defense counsel argued as follows: "I object unless and until the State can show compliance with that statute

---

[17](...continued)
states further that the way in which attorney-client calls are handled "is sketchy at best," and that some conversations with his mother "were extremely prejudicial." Other than making these passing contentions, Mr. Dunn failed to adequately brief these issues. *See State v. Grimes*, 226 W. Va. 411, 422, 701 S.E.2d 449, 460 (2009) ("Inasmuch as those matters were set forth in the appellant's brief in a cursory or tangential manner, they are not cognizable in this appeal."); *State v. Lockhart*, 208 W. Va. 622, 627 n.4, 542 S.E.2d 443, 448 n.4 (2000) ("Assignments of error that are not briefed are deemed waived.").

on the recordation of the phone calls. . . .  If they can show that, then obviously, they're entitled to obtain that information. . . ."

In response to Mr. Dunn's objection, the State called the correctional officer at the regional jail who was responsible for security at the jail.  The officer was examined by the State and defense counsel.  At the conclusion of the officer's testimony, the trial court made the following ruling:

> THE COURT: Well, the Court, recognizing the obligations, believes it has been appropriately shown, and so I'm going to order–the testimony of this witness has shown that the statute has been complied with, with regard to the monitoring of phone calls, and that this defendant, based upon policy and procedure, was, in fact, provided with a copy of the handbook, which does, in fact, warn them, and the process is that they are warned before each call is completed.

Mr. Dunn now contends that there was no evidence that he personally received a copy of the handbook that informs inmates that their telephone conversations will be monitored.  We find no merit to this argument.  The trial court made findings, based upon the State's evidence, that the jail followed the procedures required to inform inmates that their telephone calls will be monitored, and made a specific finding that Mr. Dunn received proper written notice of the same.  Mr. Dunn was at the hearing when the trial court heard evidence on this issue.  However, Mr. Dunn did not, through his own testimony or the

testimony of any witness, present any evidence to dispute the trial court's findings.  Thus we reject this issue.

### *D.  Refusing to Grant a Mistrial*

The next issue raised by Mr. Dunn is that the trial court committed error in denying his motion for a mistrial.  Mr. Dunn contends that he was entitled to a mistrial because two jurors engaged in a "heated" conversation in the courtroom.  The State contends that the record does not support the argument and that the issue was inadequately briefed.

We begin by noting that "[t]he decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court."  Syl. pt. 8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989).  As we explained in *State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983), "[a] trial court is empowered to exercise this discretion only when there is a 'manifest necessity' for discharging the jury before it has rendered its verdict."  *See* W. Va. Code § 62-3-7 (1923) (Repl. Vol. 2014) ("[I]n any criminal case the court may discharge the jury, when it appears . . . that there is manifest necessity for such discharge.").  We also have long recognized that "'[m]isconduct of a juror, prejudicial to the complaining party, is sufficient reason to direct

30

a mistrial or set aside a verdict rendered by the jury of which he is a member.'" *Bluestone Indus., Inc. v. Keneda*, 232 W. Va. 139, 143, 751 S.E.2d 25, 29 (2013) (quoting Syl. pt. 3, *Legg v. Jones*, 126 W. Va. 757, 30 S.E.2d 76 (1944)).

The issue of a mistrial occurred after the jury returned its verdict in the case. The trial court asked the jurors generally if the verdict was unanimous on all issues. One juror stated that the verdict was not unanimous on the issue of mercy. During the discussion with the juror about the verdict on mercy, the trial judge left the courtroom for a brief period to retrieve something. When the trial judge returned, he polled the jurors individually on the issue of mercy. All jurors, except one, indicated that they voted to deny mercy. The trial judge informed the jury that the verdict on mercy had to be unanimous. *See* Syl. pt. 4, *State v. McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289 (2010) ("Consistent with the provisions of West Virginia Rule of Criminal Procedure 31, a jury verdict in the mercy phase of a first degree murder trial must be unanimous and the jury should be so instructed regardless of whether a bifurcated or unitary trial occurs."). The court thereafter sent the jury back to the jury room to deliberate further on the issue of mercy. Once the jury returned to the jury room, Defense counsel made a motion for a mistrial as follows:

> MR. WHITE: Well, Your Honor, at this time we'd move for a mistrial. While the Court absented itself, two of the jurors were continuing to deliberate in the jury box, and I guess it was Juror No. 1 and the other juror, who was seated right in front of her, were engaged in a heated argument.

31

THE COURT: This was Juror No. 1, so that would have been Juror No. 7 at that end.

MR. WHITE: The two women in both–at the end of the rows, one behind the other, were engaged in a heated discussion. Everybody saw them. And, of course, that means they were deliberating not in the presence of all 12 of them, and not within the hearing of all 12 of them, and that violates the jury's–the sanctity of the jury deliberations, because they obviously deliberated outside the jury room, and so we ask for–

The attorney for the State responded to the motion for mistrial by stating: "I didn't observe it, and I'm the one sitting closest, and we have no idea what they were talking about." The State also argued that, even if Mr. Dunn was entitled to a remedy, it would not be a mistrial on the unanimous guilty verdicts the jury had returned. In denying the motion for mistrial, the trial judge ruled that it would give the jury an opportunity to reconsider the issue of mercy, and that ultimately the issue of a mistrial would be applicable only to the question of mercy. The jury eventually returned a unanimous verdict denying mercy.

As noted earlier, the State contends on appeal that Mr. Dunn failed to brief this issue adequately. We agree with the State that this issue was not sufficiently briefed.[18]

---

[18]Mr. Dunn's argument consisted of three paragraphs that were merely two sentences each, and one paragraph that contained merely six words. Mr. Dunn also cited, without any discussion, to the case of *State v. Dellinger*, 225 W. Va. 736, 696 S.E.2d 38 (2010). *Dellinger* has no application to the issue of jurors talking to each other in the courtroom. That case dealt with the issue of a juror's complete lack of candor during voir dire regarding her connections to the defendant and two witnesses.

32

However, even if Mr. Dunn had adequately brief this issue with arguments and citations to relevant authority, we still would find that the trial court did not abuse its authority in denying the motion for a mistrial. The mere fact that two jurors spoke to each other while the trial court was out of the courtroom, without more, does not rise to the level of showing a "manifest necessity" for declaring a mistrial. There was no evidence presented that the trial court instructed the jury not to speak when it stepped out of the courtroom; nor was there any evidence indicating what the conversation was about. As noted by the State, Mr. Dunn failed to even ask the court to make an inquiry as to the nature of the conversation.[19] Under these facts, there simply were no grounds for granting a mistrial. We have been quite clear in holding that, "[b]efore a manifest necessity exists which would warrant the declaring of a mistrial and the discharging of the jury and ordering a new trial, the circumstances must be prejudicial, or appear to be prejudicial, to the accused or the state."

---

[19]Mr. Dunn has suggested that the trial judge should have sua sponte questioned the two jurors. We do not believe the facts of this case warranted the trial court conducting voir dire sua sponte of the two jurors. *See Nash v. State*, 439 Md. 53, 69, 94 A.3d 23, 32 (2014) ("When a party moves for a mistrial based upon the conduct of jurors, we impose on trial judges the duty to conduct voir dire sua sponte, prior to ruling on the motion, in two sets of circumstances. The first circumstance occurs when a juror's actions constitute misconduct sufficient to raise a presumption of prejudice that must be rebutted before a mistrial motion may be denied. The second, ancillary circumstance occurs when a material and relevant fact regarding a juror's conduct is unknown or obscure and must be resolved[.]").

Syl. pt. 3, *State ex rel. Brooks v. Worrell*, 156 W. Va. 8, 190 S.E.2d 474 (1972). Mr. Dunn has failed to show the trial court abused its discretion in denying his motion for a mistrial.[20]

## IV.

## CONCLUSION

We affirm the judgment of the circuit court convicting Mr. Dunn of first degree murder and attempted murder, and sentencing him to life imprisonment without mercy and a consecutive sentence of three to eighteen years in prison.

Affirmed.

---

[20]The last issue raised by Mr. Dunn is that the trial court erred in refusing a jury instruction that outlined factors the jury should consider in deciding the issue of mercy. The State argues, and we agree, that this issue was not adequately briefed. The sum total of Mr. Dunn's argument is that this Court should overrule Syllabus point 1 of *State v. Miller*, 178 W. Va. 618, 619, 363 S.E.2d 504, 505 (1987), wherein we held that "[a]n instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given." Even had Mr. Dunn briefed this issue adequately, we would not overrule *Miller*. *See Lister v. Ballard*, No. 15-0028, 2016 WL 857695 (W. Va. Mar. 2, 2016) ("Based on our ruling in *Miller*, we find no error with the circuit court's decision not to give an instruction outlining factors for the jury to consider in determining whether to recommend mercy."); *State v. Flournoy*, 232 W. Va. 175, 182, 751 S.E.2d 280, 287 (2013) ("The defendant has given us no reason to revisit our findings and holding in *Miller*.").