# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.)  No. 23-573** (Clay County CC-08-2021-F-23)

**Cody Brooks Moore,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Cody Brooks Moore appeals the Circuit Court of Clay County's September 5, 2023, order, alleging that the court erred in denying his motions regarding a mistrial and jury instructions.[1] Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The petitioner was indicted on charges of murder, wanton endangerment involving a firearm, two counts of use or presentation of a firearm during the commission of a felony, and assault during the commission of a felony; his jury trial began on January 24, 2023. Relevant to this appeal, trial testimony revealed that Jamie Morris, Shon Parsons, Ronnie Welch, Mackenzie Johnson, Brandon Nottingham, and Savannah Nottingham were at Jamie Morris's home on November 4, 2020. The petitioner arrived at Mr. Morris's home in the early hours of that morning and immediately became embroiled in an argument with Mr. Welch. The victim, Benjamin Laughlin, intervened in the argument, which led to a physical altercation between the petitioner and Mr. Laughlin. Mr. Laughlin had the petitioner pinned to the floor when a cabinet fell on them and broke them apart. Mr. Laughlin had risen from the floor and had walked about four or five feet away when the petitioner shot him in the back.  The petitioner then rose from the floor, stood over Mr. Laughlin, and said, "That's why I carry a gun, b****." The petitioner shot Mr. Laughlin twice more, with the last shot fired into Mr. Laughlin's face. The petitioner kicked and spit on Mr. Laughlin after shooting him. Mr. Parsons and Mr. Morris indicated that Mr. Laughlin did not have any weapons or make any threatening statements before the petitioner shot him. Mr. and Mrs. Nottingham were in the converted garage, off the main area of the house; they did not see the shooting but heard the noise of fighting and the sounds of a gun firing. Mr. Nottingham said that the shooting was rapid, lasting about four to seven seconds, with "controlled aiming." The

---

[1] The petitioner is represented by counsel Jeremy B. Cooper. The State of West Virginia appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

1

petitioner held Mr. Morris, Ms. Johnson, and Mr. Parsons in the house at gunpoint but later allowed them to leave. Mr. Laughlin died as a result of the gunshot wounds inflicted by the petitioner.

The petitioner testified that, during an argument with Mr. Welch, Mr. Laughlin grabbed the petitioner in a chokehold, rendering him unconscious. When the petitioner regained awareness, he was face down on the ground, "being kicked in the back, the ribs and the head at the same time" causing him to lose control of his bladder. The petitioner stated that he was very frightened and unable to think clearly, so he grabbed his pistol, rolled on the floor, and fired three successive shots "away from where [he] thought everybody was." The petitioner testified that he did not think he would be alive if he had not "pulled [his] pistol and shot it."

On cross-examination, the prosecutor asked the petitioner the following questions: Were Ms. Nottingham, Mr. Nottingham, and the arresting officer lying or "not telling the truth?" Was the petitioner "the only person telling the truth?" Why did Mr. Nottingham's testimony conflict with the petitioner's? "What would Shon Parsons have to gain by coming here and. . . . If you know, what would Shon Parsons have—?" The petitioner's counsel objected to each of these questions, and the circuit court sustained those objections.

At the close of the State's evidence, the petitioner moved for an acquittal on all counts, and the circuit court granted the petitioner's motion on the assault count. After the close of all the evidence, the petitioner moved for a mistrial "based upon the repeated, and cumulative, and prejudicial, improper questions that the State of West Virginia engaged in during cross-examination" of the petitioner. The petitioner argued that the State's line of questioning was "designed to elicit some type of impermissible inference." The petitioner proffered the following jury instruction to address the perceived prejudice:

> The Court instructs the Jury that it is improper to ask one witness to testify to the truthfulness or credibility of another witness. It was improper for the State to ask the defendant to comment on the veracity of the other witnesses and you should not draw any inferences from those improper questions.

The circuit court denied the petitioner's motion for a mistrial and refused the proffered instruction. The State proffered a proposed justification instruction to the court, which read:

> The Court instructs the Jury that a person is not justified in shooting or employing a deadly weapon after the adversary has been disarmed or disabled. State v. Baker, 177 W. Va. 769, 356 S.E.2d 862 (W. Va. 1987) quoting State v. Clark, 331 S.E.2d 496, 175 W. Va. 58 (W. Va. 1985).

The petitioner objected to this instruction, arguing that it was incomplete and that the topic was sufficiently covered elsewhere in the instructions. The court overruled the petitioner's objection and included the justification instruction within its charge to the jury.

The circuit court's charge to the jury also included sections titled *Self Defense and The Credibility of Witnesses-the Weight of the Evidence*. The self-defense instruction read as follows:

2

One of the questions raised – or questions returned by you in this case is whether or not the defendant acted in self-defense so as to justify his acts. Under the laws of this [S]tate, if the defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily injury which he could save himself only by using deadly force against his assailant, then he had the right to employ deadly force in order to defend himself. By deadly force is meant force which is likely to cause death or serious bodily injury.

In order for the defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on him or have been the aggressor. Mere words, without more, do not constitute provocation or aggression.

The circumstances under which he acted must have been such as to produce in the mind of a reasonable prudent person, similarly situated, that the reasonable belief that the other person was then about to kill him or to do him serious bodily harm. In addition, the defendant must have actually believed that he was in imminent danger of death or serious bodily harm, and that deadly force must be used to repel it.

The witness credibility instruction stated, "You are the sole judges of the credibility of the witnesses and the weight of the evidence. As used in these instructions, 'the credibility of the witness' means the believability or the lack of believability of the witness."

The jury convicted the petitioner of voluntary manslaughter and two counts of use or presentation of a firearm during the commission of a felony. The jury acquitted the petitioner on the wanton endangerment count. At the petitioner's sentencing hearing, the circuit court granted his motion for acquittal on one count of use or presentment of a firearm based on the jury's acquittal for the corresponding count of wanton endangerment. The court sentenced the petitioner to fifteen years of imprisonment on voluntary manslaughter and ten years of imprisonment on use or presentment of a firearm during the commission of a felony, to run consecutively. The petitioner now appeals the court's September 5, 2023, sentencing order.

First, the petitioner argues that the circuit court erred in denying his motion for a mistrial due to prosecutorial misconduct. In support of this assignment of error, the petitioner cites instances in the appellate record where the prosecutor asked the petitioner questions regarding other witnesses' testimony. We have indicated that "[t]he decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008). "The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syl. Pt. 4, *State v. Dunn*, 237 W. Va. 155, 786 S.E.2d 174 (2016) (citation modified). The court may grant a mistrial "when there is a 'manifest necessity' for discharging the jury before it has rendered its verdict." *State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983). However, "[b]efore a manifest necessity exists which would warrant the declaring of a mistrial and the discharging of the jury and ordering a new trial, the circumstances must be prejudicial, or appear to be prejudicial, to the accused or the state." Syl. Pt. 3, *State ex rel. Brooks v. Worrell*, 156 W. Va. 8, 190 S.E.2d

474 (1972).

In the present case, the petitioner alleges misconduct because the prosecutor asked if he disputed the testimony of other witnesses. The petitioner objected to this line of questioning, but the circuit court overruled his objections. However, we find no error in the court's ruling, as we have stated that "[i]t is not improper on cross-examination to direct a witness to specific previous testimony of another witness and ask the witness whether he agrees or disagrees with such testimony." Syl. Pt. 3, in part, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979). Next, the petitioner objected to the prosecutor's questions regarding the veracity of other witnesses. The court appropriately sustained the petitioner's objections to those questions, as we have stated "[i]t is objectionable on cross-examination to require a witness to state whether another witness' testimony is true or false, since this is the ultimate question that a jury must decide." *Id*. Finally, the petitioner objected to the prosecutor's questions regarding other witnesses' motives for testifying. Again, we conclude that the court appropriately sustained the petitioner's objections, as we have indicated that lay opinion testimony of this nature is "not helpful to the jury in understanding the testimony and/or determining a factual issue in the case[.]" *See State v. Anthony M.*, 251 W. Va. 485, 502, 914 S.E.2d 720, 737 (2025); *accord* W. Va. R. Evid. 701. Despite the circuit court's rulings, the petitioner asserts that the State's conduct during his cross-examination constituted prosecutorial misconduct.

We have held:

> The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

Syl. Pt. 3, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977).

The appellate record supports the petitioner's contention that the prosecuting attorney failed to uphold his duty of fairness and impartiality by repeatedly posing improper questions to the petitioner, but we have indicated that "[p]rosecutorial misconduct does not always warrant the granting of a mistrial or a new trial." *See State v. Guthrie*, 194 W. Va. 657, 684, 461 S.E.2d 163, 190 (1995). Further, we have stated that "[o]rdinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." Syl. Pt. 18, *State v. Hamric*, 151 W. Va. 1, 151 S.E.2d 252 (1966). Here, the petitioner did not make a timely request for the court to direct the jury to disregard the improper questions posed by the prosecution. *See* Syl. Pt. 5, in part, *State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987) ("If either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks."). However, the appellate record shows that the court sustained the defense's objections to the prosecutor's improper questions—*before* the petitioner verbalized a response. *See State v. Hoard*, 248 W. Va.

4

428, 439–40, 889 S.E.2d 1, 12–13 (2023) (stating that "'the circuit court did not allow the constitutionally impermissible evidence to be presented to the jury. This distinction is critical to our conclusion in the present case that the prosecutor's unanswered question did not constitute error.'" (quoting *Buxton v. Ballard*, No. 14-0648, 2015 WL 2364510 (W. Va. May 15, 2015) (memorandum decision))). Additionally, the court's charge to the jury instructed that the jury was the sole judge of witness credibility. We conclude that, under these circumstances, the court's evidentiary rulings and witness credibility jury instruction were sufficient to avert the manifest necessity of a mistrial due to the potential prejudice of the prosecutor's improper cross-examination questions. *See Guthrie*, 194 W. Va. at 684, 461 S.E.2d at 190 ("In determining prejudice, we consider the scope of the objectionable comments and their relationship to the entire proceedings, the ameliorative effect of any curative instruction given or that could have been given but was not asked for, and the strength of the evidence supporting the defendant's conviction."). Therefore, the circuit court did not abuse its discretion in denying the petitioner's motions for a mistrial.

Second, the petitioner alleges that the circuit court erred in denying his proffered instruction regarding the prosecutor's improper credibility questions. The petitioner's instruction indicated that it was improper for the State to ask him to comment on the truthfulness of other witnesses, and the jury should avoid drawing any inferences from those questions. "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion." Syl. Pt. 1, in part, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996). We have also held:

> A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994). As discussed *supra*, the court sustained each of the defense's objections to the State's improper cross-examination questions about witness credibility before the petitioner verbalized a response thus minimizing prejudice and the necessity of a curative jury instruction. Moreover, the court's charge to the jury indicated that the jurors were "the sole judges of credibility. . . . which means the believability or the lack of believability of the witness." Therefore, the information contained within the petitioner's proffered instruction was already "substantially covered in the charge actually given to the jury[.]" *See Derr*, 192 W. Va. at 168, 451 S.E.2d at 734, Syl. Pt. 11, in part. We conclude that the court did not abuse its discretion in denying the petitioner's proffered witness credibility instruction.

Lastly, the petitioner alleges that the court incorrectly instructed the jury on self-defense, arguing that the wording of the justification instruction might have led the jury to believe "that it would have to convict in all circumstances in which the decedent was disarmed and/or disabled, irrespective of [his] mental state." We have held that "the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." *Hinkle*, 200 W. Va. at 281, 489 S.E.2d at 258 (1996), Syl. Pt. 1, in part. "We consider all the jury heard and, from the standpoint of the jury, decide not whether the charge was faultless in every particular but whether the jury was misle[]d in any way and whether it had an understanding of the issues and its duty to determine

those issues." *Id.* at 285, 489 S.E.2d at 262 (citing *Guthrie*, 194 W. Va. at 671 461 S.E.2d at 177).

Before a self-defense jury instruction is deemed warranted, our jurisprudence requires a defendant to provide sufficient evidence to support a claim of self-defense by showing that they were not the aggressor, had a reasonable belief they were at imminent risk of serious bodily injury or death, and that they acted in proportion to the danger posed. *See State v. Harden*, 223 W. Va. 796, 809, 679 S.E.2d 628, 641 (2009) (listing the elements of a self-defense claim). We have indicated that "the 'reasonableness' of a defendant's belief that he or she was at 'imminent' risk of death or serious bodily injury is a two-part inquiry, with a subjective component and an objective component." *Id.* at 802–03, 679 S.E.2d at 634–35. Here, the instructions given by the court stated that a person could claim self-defense if he "was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily injury [from] which he could save himself only by using deadly force[.]" The court further instructed that "[t]he circumstances under which [the petitioner] acted must have been such as to produce in the mind of a reasonable prudent person, similarly situated, the reasonable belief that the other person was then about to kill him or do him serious bodily harm" and that the petitioner "must have actually believed that he was in imminent danger of death or seriously bodily harm and that deadly force had to be used to repel it." We determine that this instruction adequately instructed the jury on the law of self-defense under the factual circumstances of this case. Further, we determine that the court's justification instruction did not compel the petitioner's conviction; rather, that instruction reiterated the "objectively reasonable" component of self-defense articulated in *Harden*. The court's justification instruction was also consistent with the court's self-defense instruction: both instructions informed the jury that a self-defense claimant must have an objectively reasonable belief regarding the risk of imminent death or serious bodily injury. Therefore, the court did not err in instructing the jury, and, as a whole, the court's instructions clearly and accurately communicated the law regarding self-defense. *See Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 4, in part ("A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy."). Accordingly, we conclude that the circuit court did not err in including the justification instruction within its charge to the jury.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 24, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

6