# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0170** (Kanawha County 19-F-55)

**Cynthia Annmarie Gatewood,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Cynthia Annmarie Gatewood, by counsel George Castelle, appeals the order of the Circuit Court of Kanawha County, entered on February 1, 2021, sentencing her to imprisonment for life, without mercy, for her conviction of first-degree murder. Respondent State of West Virginia appears by counsel Patrick Morissey and Scott E. Johnson.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Gatewood fatally stabbed a woman who was a stranger to her in a Sissonville, West Virginia parking lot in September of 2018. It is undisputed that the attack was unprovoked and Ms. Gatewood had no interaction with the victim prior to the stabbing. She was indicted in the Circuit Court of Kanawha County and tried in a bifurcated proceeding. Ms. Gatewood gave notice that she would present a defense of insanity, supported by the report of forensic psychologist Clifton Hudson, who found that Ms. Gatewood was competent to stand trial and criminally responsible for her actions, but that her "use of methamphetamine contributed to her irrationality and aggression . . . and [that it was] likely that the offense would not have occurred if she had not been using the drug."[1]

---

[1] Ms. Gatewood, who was thirty years old when she attacked her victim, began using methamphetamine when she was seventeen or eighteen years old. She was temporarily "clean" but relapsed the day before the murder.

1

Prior to trial, the State moved to exclude testimony advancing the insanity defense. The circuit court ruled that such testimony, including that of Dr. Hudson, could be offered for the limited purpose of establishing that long-term drug use might affect a person's brain, but that Dr. Hudson could not testify about Ms. Gatewood's intent. Furthermore, if Ms. Gatewood offered Dr. Hudson's testimony about the effect of long-term drug abuse on the brain, the State could inquire about the purpose of Dr. Hudson's evaluation and his conclusions about Ms. Gatewood's competency and criminal responsibility. The circuit court declined to allow questions about insanity on the verdict form, because no expert deemed Ms. Gatewood mentally compromised. (Dr. Timothy Thistlethwaite also evaluated Ms. Gatewood and found that she was competent to stand trial and criminally responsible for her actions.) The case proceeded to trial subject to the circuit court's ruling.

The investigating officer was among the witnesses offered by the State in the guilt phase. He testified that Ms. Gatewood asked if her victim—who was still alive when Ms. Gatewood was arrested—was "okay." On cross-examination, Ms. Gatewood's attorney asked the detective whether Ms. Gatewood was relieved when she believed the victim was not fatally injured. On redirect, the assistant prosecuting attorney elicited testimony that Ms. Gatewood repeatedly asked if she was "in trouble" when questioned by officers. The assistant prosecuting attorney asked, "And do you think her concern was really for the victim or for herself?" Ms. Gatewood's attorney objected, and the court overruled the objection. The officer replied that Ms. Gatewood was concerned for herself.

Ms. Gatewood testified on her own behalf during the guilt phase of her trial, and she informed the jury that she suffered auditory and visual hallucinations because of her drug abuse. She testified that these hallucinations caused her to believe that the victim called her a "stupid b---h" when they passed one another in the parking lot. Ms. Gatewood's assertion led to the following cross-examination by the assistant prosecuting attorney:

> Q: But on [the day of the murder], you want to say now that you were so out of your mind that you remember to take your mom pizza; is that right?
>
> A: I never did say I was out of my mind.
>
> Q: And you were so out of your mind on meth, you said, that you remembered what you needed to pick up at the store, is that right?
>
> A: I never said—I don't remember saying that I was out of my mind. Maybe I felt like I was out of my mind, but, obviously, I've been evaluated twice.
>
> Q: And you've been found to be competent; correct?
>
> A: Yes, ma'am
>
> Q: And criminally responsible; correct?

A: Yes, ma'am.

The assistant prosecuting attorney's questions about competency and criminal responsibility drew an objection from Ms. Gatewood's attorney, but the circuit court overruled the objection on the ground that Ms. Gatewood "opened the door" to this line of inquiry when she testified that she had "been evaluated twice." At the conclusion of Ms. Gatewood's testimony, her attorney moved the circuit court to allow Dr. Hudson to "testify in full about the evaluation that [the assistant prosecuting attorney] raised[,]" arguing that the State, not Ms. Gatewood, opened the door to this testimony by informing the jury that Ms. Gatewood was competent and criminally responsible. The court denied the motion, noting that Ms. Gatewood's reference to the evaluations was nonresponsive to the State's questions and that Ms. Gatewood "offered a lot of information in a nonresponsive fashion and I cautioned her against it a number of times." Ms. Gatewood then reserved Dr. Hudson's testimony for the mercy phase of her trial.

Ms. Gatewood asked the court to qualify Dr. Hudson as an expert forensic psychologist with expertise in long-term drug addiction. The court ruled that Dr. Hudson could testify about the effects of long-term addiction by virtue of his experience, but that Dr. Hudson is not an expert on the effects of long-term substance abuse. The court did not allow Dr. Hudson to testify that Ms. Gatewood would not have committed murder had she not suffered methamphetamine addiction. During the mercy phase, Dr. Hudson testified that Ms. Gatewood suffered an unspecified bipolar disorder and a borderline personality disorder, among other unspecified substance abuse disorders; that she was frequently hospitalized for hallucinations and delusions stemming from substance abuse and psychosis; that she suffered paranoia; that the symptoms she experienced typically lead to irrational and violent behavior; and that the symptoms she exhibited can occur even after a person stops drug use.

After the conclusion of the evidence, the jury found that Ms. Gatewood was guilty of first-degree murder, and it did not recommend mercy. Ms. Gatewood was sentenced accordingly. On appeal, Ms. Gatewood asserts five assignments of error: (1) that the circuit court erred in ruling that Ms. Gatewood opened the door to the assistant prosecuting attorney's questioning; (2) that the circuit court failed to recognize that the State opened the door and further failed to allow Ms. Gatewood an opportunity "to place the results in context"; (3) that the State opened the door in error, and the error was not harmless; (4) that the circuit court erroneously failed to qualify Dr. Hudson as an expert on the effects of long-term drug addiction; and (5) that the circuit court erred in allowing an investigating officer to offer an opinion about the sincerity of petitioner's remorse. We approach each assignment of error with the recognition that

> [t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995).

3

We consider Ms. Gatewood's first, second, and third assignments of error collectively because they are significantly intertwined. The State argues that the assistant prosecutor's line of questioning implicates the doctrine of curative admissibility.[2]

> The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has "opened the door" by introducing similarly inadmissible evidence on the same point. Under this rule, in order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.

Syl. Pt. 10, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). The circuit court initially ruled that evidence of Ms. Gatewood's mental examinations would not be admissible, but cautioned counsel that reference to Dr. Hudson's report would result in the court's allowing the State to clarify the circumstances of the examinations. The circuit court's warnings were frequent and plentiful. It is apparent that Ms. Gatewood understood the potential ramifications of mentioning her mental health examinations but chose to mention them anyway. The State's inquiry about the circumstances of those examinations was necessary to dispel any implication that Ms. Gatewood's examinations were anything other than diagnostic.

In her fourth assignment of error, Ms. Gatewood argues that the circuit court erred when it declined to qualify Dr. Hudson as an expert on the long-term effects of drug addiction. "'The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong.' Syllabus point 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991)." Syl. Pt. 2, *State v. Dunn*, 237 W. Va. 155, 786 S.E.2d 174 (2016). We have explained how a circuit court should approach the question of admissibility:

---

[2] Because Ms. Gatewood did not introduce evidence of her examinations, we note that the path by which questionable evidence finds itself before the jury determines whether the curative admissibility rule apples.

> Technically, it is questionable whether curative admissibility is available to the State. The doctrine of curative admissibility allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has "opened the door" by introducing similar inadmissible evidence on the same point. *See generally* 1 John Henry Wigmore, *Evidence in Trials at Common Law* § 15 (Peter Tillers rev.1983) (collecting cases from many jurisdictions). Normally, curative admissibility becomes important only when extrinsic rebuttal evidence is offered. If the contested evidence comes in as a result of cross-examination (intrinsically), its admissibility is determined by the scope of cross-examination. In any event the principles underlying both of these methods are the same.

*State v. Potter*, 197 W. Va. 734, 748 n.24, 478 S.E.2d 742, 756 n.24 (1996).

In determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

Syl. Pt. 5, *Gentry v. Mangum*, 195 W. Va. 512, 466 S.E.2d 171 (1995).

Dr. Hudson holds a doctorate in counseling psychology and has practiced forensic psychology for more than fifteen years, but the circuit court explained that as to "long-term substance abuse, all he testified was that his forensic psychology practice was not a treatment specialty. He did not do substance abuse treatment, but that substance abuse was involved in aspects of many of his cases. That does not make him an individual who has expertise in that field." The circuit court was not clearly wrong to find that Dr. Hudson's expertise did not extend to the particular impact of longtime methamphetamine use on one's brain. Thus, we find no error in the circuit court's ruling.

We turn to Ms. Gatewood's fifth and final assignment of error, in which she argues that the circuit court erred by allowing the investigating officer to testify about his impression that Ms. Gatewood, when inquiring about her victim's status, asked selfishly.[3] This testimony was offered in the guilt phase of the trial, on redirect examination after Ms. Gatewood's counsel asked the officer, "[Ms. Gatewood] expressed that she was relieved when she was told that the [victim] . . . was okay, right?" The officer testified on redirect that Ms. Gatewood asked him, throughout her interview, whether she would be in trouble, and he answered affirmatively, leading the assistant prosecuting attorney to ask, "And do you think her concern was really for the victim or for herself?" This question drew an objection from defense counsel, which was overruled by the circuit court. The officer answered that Ms. Gatewood was concerned for herself. Ms. Gatewood's argument is that the officer's response infringes on the jury's province of evaluating witness credibility. *See* Syl. Pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967).

In *State v. Wood*, 194 W. Va. 525, 532, 460 S.E.2d 771, 778 (1995), this Court wrote that Rule 608(a)(1) of the West Virginia Rules of Evidence "explicitly 'permits [opinion] testimony concerning a witness's general character or reputation for truthfulness or untruthfulness but prohibits any [opinion] testimony as to a witness's truthfulness on a particular occasion." The police officer's testimony about Ms. Gatewood's sincerity, though logically based on the overwhelming ratio of Ms. Gatewood's questions about the degree of trouble she faced, dangerously explored the jury's territory. This is demonstrated by the assistant prosecuting

---

[3] When the assistant prosecuting attorney asked, "And do you think [Ms. Gatewood's] concern was really for the victim or herself?" Ms. Gatewood's attorney objected on the basis that the question called for speculation. This objection was not sufficient to "articulate [the error] with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect" that is now argued on appeal. *See* Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996). Nevertheless, we address Ms. Gatewood's assignment of error.

attorney's explanation to the circuit court that she asked the police officer his impression based on Ms. Gatewood's having "asked several times if she is going to jail. She ask[ed] what's going to happen to her." This evidence of Ms. Gatewood's self-concern was available to present to the jury so that jury members could draw their own conclusions about Ms. Gatewood's sincerity. Nevertheless, we find that any error in the admission of the police officer's opinion testimony was harmless in light of the overwhelming evidence of Ms. Gatewood's guilt and the circumstances of the murder, as well as testimony elicited during Ms. Gatewood's own cross-examination:

> Q:     So at that time you were mostly concerned with whether you were going to be in trouble; correct?
>
> A:     Yes. I was scared. Yes.

We find no prejudicial error in the circuit court's treatment of the police officer's testimony concerning Ms. Gatewood's sincerity.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice C. Haley Bunn